NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEW JERSEY TURNPIKE AUTHORITY,** | Docket No.: 14-4589 |
| Plaintiff, | OPINION |
| v. | |
| **JERSEY BOARDWALK FRANCHISING CO., INC., JERSEY BOARDWALK PIZZA CORP., and BOARDWALK PIZZA, INC.,** | |
| Defendants. | |

### WILLIAM J. MARTINI, U.S.D.J.:

This is an action for service mark infringement, service mark dilution, unfair competition, and other relief arising under the trademark and service mark laws of the United States, specifically 15 U.S.C. § 1051 et seq. ("Lanham Act') and the common law of the State of New Jersey. (Complaint at ¶ 1). In short, Plaintiff New Jersey Turnpike Authority alleges that the Defendants, who operate as a small Florida pizza company, have appropriated the Garden State Parkway logo.

Defendants Jersey Boardwalk Franchising Co., Inc., Jersey Boardwalk Pizza Corp., and Boardwalk Pizza, Inc. ("Defendants") filed this motion to dismiss the Complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1), lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court lacks personal jurisdiction over the Defendants and therefore will grant the Rule 12(b)(2) motion to dismiss.

1

**I.     BACKGROUND**

Plaintiff is a quasi-government organization located in Woodbridge, New Jersey. (Complaint at ¶ 2). Plaintiff is the owner of the Garden State Parkway logo. The logo has been in existence since 1956. The logo has been registered as a United States Service Mark in International Class 37 for highway management and maintenance services and Class 39 for travel information services. (Complaint at ¶ 19).



Jersey Boardwalk Pizza, Inc. ("Boardwalk Pizza"), a Florida corporation, formerly known as Boardwalk Pizza, Inc., owns and operates a pizza restaurant in Tavernier, Florida (the "Original Restaurant"). (Declaration of Paul DiMatteo ("DiMatteo Decl.") at ¶ 3). The Original Restaurant offers dine-in, take-out, and delivery services to its patrons exclusively within the state of Florida. (DiMatteo Decl. at ¶ 4). The owners are originally from the New Jersey towns of Belmar and Brick.

Defendants use two allegedly infringing trademarks:




The Original Restaurant began using the "Boardwalk Pizza" logo when it opened in 2005. (DiMatteo Decl. at ¶ 23). In November 2011, it obtained federal registration with the U.S. Patent and Trademark Office ("USPTO"). (DiMatteo

2

Decl. at ¶ 24). In April 2014, the USPTO issued a determination regarding the "Jersey Boardwalk Pizza" logo that stated: "the trademark examining attorney has searched the USPTO's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). TMEP §704.02; *see* 15 U.S.C. §I 052(d)." (DiMatteo Decl. at ¶ 30).

Jersey Boardwalk Franchising, Inc. ("JBF"), also a Florida corporation with its principal (and only) place of business in Homestead, Florida, is the franchisor of the *Jersey Boardwalk Co.*® franchise system. (DiMatteo Decl. at ¶ 9). JBF launched a franchise program offering qualified applicants the right to open and operate pizza restaurants modeled after the Original Restaurant under the mark *Jersey Boardwalk Co.*®. (DiMatteo Decl. at ¶ 10). JBF offered franchises to prospective franchisees from January 2013 through April 2014. (DiMatteo Decl. at ¶ 11). JBF never offered or sold any franchise opportunities in the state of New Jersey. (DiMatteo Decl. at ¶ 12). JBF is not presently offering franchises anywhere in the United States (or elsewhere), and has not offered franchise opportunities to anyone since April 30, 2014. (DiMatteo Decl. at ¶ 13).

The Defendants operate a website, jerseyboardwalkpizza.com. (*See* Declaration of Ronald Israel). The website advertises Defendants as producing "Authentic Italian Food From Jersey." According to this website, the Defendants only have one location other than the Original Restaurant, which is located in Florida City, Florida. Although the website has a link stating "Franchise Opportunities – Click Here," the link routes to GoDaddy.com, where it states that the domain name "jerseyboardwalkfranchising.com" has expired.

Defendants' website has merchandise available. Before initiation of this lawsuit, no one had ever purchased any merchandise from the website. (DeMatteo Decl. at ¶ 20). Since the initiation of this lawsuit, Defendants have only sold $577 worth of merchandise, $200 of which was attributable to orders placed by New Jersey residents. (DeMatteo Decl. at ¶ 19).

In 2011, following the aftermath of Super Storm Sandy, Boardwalk Pizza sent a truck filled with charitable donations of food and supplies contributed by members of the Florida community to people in New Jersey. (DeMatteo Decl. at ¶ 5).

## II.   LEGAL STANDARD – PERSONAL JURISDICTION

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a

complaint for lack of personal jurisdiction. "[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). First, the court applies the relevant long-arm statute of the forum state to determine if it permits the exercise of jurisdiction. *Id.* at 259. Second, the court applies the principles of the Due Process Clause of the Constitution. *Id.* In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process. *See* N.J. Court. R. 4:4-4(c); *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981). Personal jurisdiction under the Due Process Clause requires a plaintiff to show that the defendant has purposefully directed its activities toward the residents of the forum state, or otherwise "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

"The due process limit to the exercise of personal jurisdiction is defined by a two-prong test. First, the defendant must have made constitutionally sufficient 'minimum contacts' with the forum." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)). "Second, if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.'" *Id.* at 150-51 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts" over a non-resident defendant can be established in one of two ways: general jurisdiction or specific jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009). General jurisdiction exists where the non-resident defendant has general contacts with the forum state that are "continuous and systematic." *Arlington Indus., Inc. v. Elec. Custom Distributors, Inc.*, 817 F. Supp. 2d 473, 477 (M.D. Pa. 2011) (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-166 (1984)). General jurisdiction allows a court to hear any and all claims against a party, even where the cause of action is unrelated to the forum. *Id.* at 477. Contacts with a forum are "continuous and systematic" where the Defendant is "essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (U.S. 2014).

"When general jurisdiction is lacking, the lens of judicial inquiry narrows to focus on specific jurisdiction." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir. 1995). Specific jurisdiction is established when a non-resident defendant has "purposefully directed" his activities at a resident of the forum, and the injury arises from or is related to those activities. *Gen. Elec. Co. v.*

4

*Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (*citing Burger King*, 471 U.S. at 472). Analysis for specific jurisdiction is a three-part inquiry. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "'purposefully directed' his activities" at the forum. *Id.* (*citing Burger King*, 471 U.S. at 472). The existence of the first element will vary with the "quality and nature of the defendant's activity," but there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d at 317 (*citing Helicopteros*, 466 U.S. at 414). Third, if the prior two requirements are met, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Id.* (*citing Burger King,* 471 U.S. at 476). Specific jurisdiction comports with fair play and substantial justice where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88 (U.S. 2011).

Plaintiff also argues that Defendants' minimal contacts should be considered under the *Calder* effects test. *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* test determines whether specific jurisdiction exists in certain contexts, even where the traditional test for minimal contacts would fail. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 108 (3d Cir. 2004). The *Calder* test has three prongs: (1) the defendant must have committed an intentional tort; (2) the plaintiff must have felt the brunt of the harm caused by that tort in the forum; and (3) the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

## III. DISCUSSION

Defendants do not have constitutionally sufficient "minimum contacts" with New Jersey. Other than the de minimus sale of branded merchandise items that, arguably, were purchased due to the publicity surrounding this lawsuit, Defendants have conducted no business with New Jersey residents. The "'level of interactivity and commercial nature' of Defendants' website is minimal." *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211 (3d Cir. 2014) (*quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The website's only interactive portion is the merchandise page, and merchandise is a de minimus

portion of the Defendants' business. *See Richter v. INSTAR Enterprises Int'l, Inc.*, 594 F. Supp. 2d 1000, 1007-09) (N.D. Ill. 2009) (noting that where a defendant's internet-based sales in a state represent both a small percentage of a defendant's total sales and a small volume of sales overall, defendants' contact with the forum state cannot be said to be substantial); *Nelson v. Massachusetts Gen. Hosp.*, No. 04-CV-5382 (CM), 2007 WL 2781241, at *22 (S.D.N.Y. Sept. 20, 2007) *aff'd*, 299 F. App'x 78 (2d Cir. 2008) ("This court is aware of no case where a finding of substantial solicitation . . . was predicated on the operation of an interactive website that has generated a small amount of activity and a de minim[u]s amount of revenue in the forum state.").

Plaintiff's argument that sending a truck full of aid from Florida to victims of Hurricane Sandy constituted a publicity stunt resulting in purposeful availment of New Jersey is simply not persuasive. That contact with New Jersey is still too attenuated to put the Defendants on notice that they would be subject to a trademark infringement suit in New Jersey.

Even the *Calder* test is of no avail to Plaintiff. Although Plaintiff may have felt the brunt of harm in New Jersey, it could not be said that New Jersey is the focal point of the offending activity. Florida is the focus of the activity. The spread of the allegedly infringing mark via merchandise sales on the internet is random and fortuitous.

Plaintiff's argument that the evocation of "Jersey" in its advertising constitutes purposeful availment of the forum state is also not persuasive. While the Defendants are evoking sentimentality with New Jersey natives in Florida for the purposes of winning customers, this appeal to the idea of "Jersey" does not demonstrate purposeful availment of the privileges of doing business in New Jersey. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). On the contrary, the Defendants' use of the idea of "Jersey" or "Italian food from Jersey" bears an element of nostalgia or even exoticism that is clearly directed to consumers outside of New Jersey.

## IV.   CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss for lack of personal jurisdiction is granted. An appropriate order follows.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 26, 2015**